UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



YUKIO KUSADA,
     Plaintiff,

v.

NORTHFIELD MOUNT HERMON SCHOOL,
FRANCIS MILLARD AND MICHAEL
ATKINS
     Defendant and
     Third-Party Plaintiff,

v.

TAKERU KUSADA,
     Third-Party Defendant.

Civil Action No. 05-30043-MAP

## AMENDED JOINT PRETRIAL MEMORANDUM

### I.    STATEMENT OF THE EVIDENCE.

**Plaintiff**

Plaintiff expects the evidence to show that on February 20, 2004 Yukio Kusada was a

student at the Northfield Mount Hermon School. On that date he was a participant in the

physical education course known as Recreational Skiing. Mr. Kusada had indicated on

documents produced by the Physical Education Department that he was a beginner skier and

desired to take ski lessons. The evidence will show that no ski lessons were available to Mr.

Kusada at Northfield Mount Hermon School or at Berkshire East Mountain where the ski course

was held. The evidence will show that Mr. Kusada had never skied prior to taking this course.

The evidence will show that Northfield Mount Hermon School required the students, including

Mr. Kusada, to provide their own ski equipment. The evidence will show that the school

recommended but did not require that students wear helmets. The evidence will show that the

school did not require Mr. Kusada to take ski lessons. The evidence will show that no employee

of Northfield Mount Hermon School provided any ski instruction to Mr. Kusada. The evidence will show that there was no indication that any representative of Berkshire East Mountain provided any ski instruction to Mr. Kusada. The evidence will show that no employee, servant and/or agent of Northfield Mount Hermon School knew what kind of ski equipment Mr. Kusada was using in the ski course, whether or not he was wearing a helmet, or where he skied during ski class. The evidence will show that there was no buddy system in place for the Northfield Mount Hermon ski course. The evidence will show that there were no assessments ever done by Northfield Mount School of Mr. Kusada's skiing ability. The evidence will show that no ski instruction was given concerning the particulars of night skiing. The evidence will show that the chaperones who accompanied the Northfield Mount Hermon students to Berkshire East Mountain received no training concerning ski instruction and ski safety. The evidence will show that from the beginning of January through February 20, 2004, the date on which the incident occurred, no member of Berkshire East Mountain or Northfield Mount Hermon School ever assessed Mr. Kusada's equipment for appropriateness for his level of skiing or his ability to ski. The evidence will show that prior to February 20, 2004 Yukio Kusada was an excellent student with no known physical disability.

The evidence will show that for the 2003-2004 Physical Education Course known as Recreational Skiing, the Director of Athletics was defendant, Frank Millard and the Coordinator of Athletics/Associate Director of Athletics was defendant, Michael Atkins. The evidence will show that both Mr. Millard and Mr. Atkins breached their duty of care to Mr. Kusada in failing to run a safe and reasonable ski program. Specifically, the evidence will show that Mr. Millard and Mr. Atkins did not know whether the lessons which were to be provided to Mr. Kusada were available to him. They did not know whether or not Mr. Kusada was wearing a helmet. They did not know whether or not the ski equipment which Mr. Kusada was using was appropriate for

2

his level of skiing. They did not know whether Mr. Kusada was skiing on a terrain which was appropriate for his level of ability. The evidence will further show that Mr. Millard and Mr. Atkins breached their duty of care owed to Mr. Kusada by failing to properly train the ski chaperones, Susan Clough, Audra Forstrum and Richard Eisenberg in the proper operation of this ski program. The evidence will further show that both Mr. Millard and Mr. Atkins failed to ensure that students, including Mr. Kusada, were wearing ski equipment which was safe for their level of skiing ability, failed to require that Mr. Kusada wear a helmet, failed to ensure that ski lessons were required and available and failed to require that buddy system be in place for the ski program.

The evidence will show that on February 20, 2004 Yukio Kusada skied on Lower Big Chief, an intermediate trail, while he was a beginner skier. At that time Mr. Kusada was using skies which were designed for an advanced skier, contrary to his beginner level of ability. The evidence will show that while skiing at night on an intermediate trail, on skies which were designed for an advanced skier and with no helmet, all unbeknownst to Mr. Atkins, Mr. Millard and any other employee of Northfield Mount Hermon School, Mr. Kusada skied off the trail and into a tree suffering a major head injury and compartment syndrome of his leg. Mr. Kusada was not found next to the tree for approximately eight hours after this incident occurred. The evidence will show that Yuki Hasegawa, a student with whom Kusada had been skiing that night, went into the Lodge to ask the chaperones if they had seen Mr. Kusada who was to meet him at the bottom of Big Chief Trail. The evidence will show that Ms. Forstrum told Mr. Hasegawa that she had not seen Mr. Kusada but that he should continue skiing and that they would meet up at the bus at approximately 9:00 P.M. The evidence will show that Mr. Hasegawa continued skiing and that when the students met at the bus at approximately 9:00 or 9:15 P.M. Mr. Kusada was not present at the bus. The evidence will further show that Berkshire

3

East Mountain personnel were not notified of Mr. Kusada's last known location on the mountain until several hours after he did not appear at the bus. The evidence will show that Mr. Kusada was found next to a tree at approximately 4:00 A.M. The evidence will show that he suffered a major brain injury which leaves him with severe life altering cognitive deficiencies. The evidence will show that he was in a state of coma for a long period of time after the incident, that he was an in-patient at Bay State Medical Center, at Spaulding Rehabilitation Center and then continued to have treatment in Japan and China. The evidence will show that Mr. Kusada has a substantial loss of earning capacity exceeding 2.8 million dollars reduced to present value and that he is likely to engage in only very entry levels of employment. The evidence will further show that Mr. Kusada suffers from significant deficiencies in his leg as a result of the compartment syndrome which required surgical intervention following the incident.

The evidence will further show that the failure of Northfield Mount Hermon School, Frank Millard and Michael Atkins to operate a reasonably safe ski program was a substantial contributing cause to Mr. Kusada's injuries on February 20, 2004.

**Defendants**

A tragic accident happened on February 20, 2004. An 18 year old Northfield Mount Hermon ("NMH") male student, Yukio Kusada ("Kusada"), skied off the trail and into the woods at Berkshire East Ski Resort ("Berkshire East") in Charlemont, Massachusetts and was seriously injured. Kusada has no memory of what happened. After extensive discovery, Kusada has been unable to produce a single eye witness to what happened.

Another student, Yuki Hasegawa ("Hasegawa"), who was skiing with Kusada, is the last person to have seen Kusada before Kusada was discovered off the trail in a gulley. He reports that he skied by Kusada on the lower Big Chief trail between 7:30 and 8 P.M. on February 20, 2004, and that Kusada was doing fine. Kusada was reported missing shortly after Berkshire East

4

closed the trails for the night because he failed to return to the NMH buses. After an extensive

all night search, Kusada was found in a gulley in the woods off the lower Big Chief trail. During

the night, the lower Big Chief trail had been swept and searched multiple times prior to 4:00

A.M. including, at one point, by a police officer with a search dog but Kusada was not found.

Finally at 4:00 A.M., a ski patroller spotted a movement off the trail. It was Kusada's arm which

apparently jerked up involuntarily. He was found unconscious.

The basis of Kusada's negligence claim is set forth in his answer to Interrogatory 4 in

which he stated:

> On information and belief, plaintiff responds as follows: I was a
> student at Northfield Mount Hermon School and was registered in
> the recreational ski program for which I was to receive physical
> education credit. I informed the school that I was a beginner skier
> and desired ski lessons. I received no ski lessons. I was on skis
> that were inappropriate for my level of skiing ability. I was not
> wearing a helmet. I received no instruction on how to ski from
> either Northfield Mount Hermon School or Berkshire East Ski
> Resort. I received no instruction on how to stop, how to control
> my speed, how to select proper terrain for my level of skiing
> ability, no instruction on night skiing. I did receive instruction
> related to wearing warm clothing at night. I skied into a tree and
> suffered severe injuries as a result. Plaintiff reserves the right to
> supplement this response.

Assuming all of those facts to be true, the claims of negligence are speculative. There

can be no showing that lessons would have mattered, or that different skis would have mattered,

or that different terrain would have mattered, or that instruction on night skiing would have

mattered, without any evidence of what happened between the last time he was seen, when he

was skiing okay, and the time he was found in the woods off the trail badly injured. We do not

know and apparently will never know whether Kusada:

1. Was chasing his friend, Yuki Hasegawa, who had just passed him;

2. Was skiing too fast to catch his friend, Hasegawa, who had just passed him;

3. Was cut off by another skier or snowboarder and forced off the trail;

5

4.      Was hit by another skier who did not report it;

5.      Did not see the edge of trail because he was looking downhill following the path of his friend, Hasegawa, rather than looking where he was going;

6.      Tried to stop;

7.      Tried to turn;

8.      Was sitting back on his skis;

9.      Was looking down hill to see where his friend, Hasegawa, was going rather than looking where he was going;

10.     Was temporarily blinded by looking into the night lights;

11.     Lost his glasses or contacts and could not see where he was going;

12.     Fell after Hasegawa passed him, got up and skied down but could not find Hasegawa and went on skiing by himself and skied into the woods on a later run when he went on skiing by himself;

13.     Failed to stay in control as required by the Skiers Responsibility Code; or

14.     Something else happened having no relationship to any of his claims of negligence.

Kusada, who is a citizen of Japan, attended Shattuck – St. Mary's School in Faribault, Minnesota for the 2001-2002 school year, his sophomore year. Kusada transferred to Northfield Mount Hermon School ("NMH") for his junior and senior years in high school. NMH is a nonprofit charitable organization within the meaning of G.L. c. 231, § 85K. Kusada was in his second semester of his senior year at NMH when this tragic accident happened. Kusada had strong athletic ability, good balance, was athletically aggressive and a risk taker.

NMH had been taking its students in the NMH Recreational Ski program to Berkshire East, a ski area located in Charlemont, Massachusetts for over thirty years. Approximately 3,000

6

students have participated. The Recreational Ski program is an elective not required activity. Students receive credit toward their physical education requirement. However, there are no grades and there is no testing. The only requirements are attendance and participation. The 2003-2004 NMH Recreational Ski program took place at Berkshire East on Wednesday afternoons and Friday evenings from January through March of 2004. It ran from Wednesday, January 7, 2004 to March 3, 2004, a total of 16 ski trips at Berkshire East. There were 12 ski trips that year prior to February 20, 2004, 13 including February 20, 2004. Kusada made at least 11 of those trips, including the one on February 20, 2004.

Berkshire East has a ski patrol which patrols the mountain. It also has a First-Aid station and EMTs. It is a recognized and well supervised ski area. It was, in all respects, an appropriate ski area for the NMH Recreational Ski Program. Berkshire East did not require testing on skiing ability during the 2003-2004 ski season before a skier could ski at Berkshire East. No ski resort in the United States required a skier to be tested on skiing ability before the skier could ski at the resort in 2003-2004. Berkshire East did not require lessons during the 2003-2004 ski season before a skier could ski at Berkshire East. No ski resort in the United States Required a skier to take lessons before the skier could ski at the resort in 2003-2004. Berkshire East allowed beginners to ski on any slope in 2003-2004 including expert slopes. Every ski resort in the United States allowed beginners to ski on any slope in 2003-2004. It is and always has been a matter of individual choice. Berkshire East did not require that a skier's equipment be inspected before a skier could ski at Berkshire East. No ski resort in the United States requires a skier's equipment to be inspected before a skier could ski in 2003-2004.

In 2003-2004, NMH recommended that all students, including Kusada, wear a helmet but it did not require that helmets be worn. Some students in the recreational ski program followed that recommendation and some did not. At least five other schools bring students to Berkshire

7

East. None required their students to wear helmets in 2003-2004. Berkshire East did not require skiers to wear helmets in 2003-2004. No state or federal law required skiers to wear helmets in 2003-2004. No private secondary school required students in recreational ski programs to wear helmets in 2003-2004. The National Ski Areas Association's position was to recommend but not require helmets in 2003-2004. The AMA recommended but did not require helmets in 2003-2004. The policy of NMH of recommending but not requiring the use of helmets was consistent with helmet utilization policy throughout the United States in 2003-2004. It has been and remains a matter of individual choice. Kusada was 18 years old and fully capable of making that decision. NMH had no duty to select or inspect his skis. Each student was responsible for his own equipment which could be rented from Berkshire East or provided by the student himself. All students were notified of this fact in the permission slip which had to be signed. The permission slip was signed and returned by Kusada. Kusada forged his father's signature.

The parents of every NMH student participating in the Recreational Ski program at NMH are required to sign a PE/A Activities Permissions form. Kusada's form was signed and returned. A student cannot participate in the Recreational Ski program unless the form is signed and returned. The form states in bold italic lettering: "I am willing to have my son/daughter take part in the activities indicated below. I release and will hold the school and its staff harmless from any liability that might result from my son/daughter engaging in these activities." In this case, Kusada signed the form forging his father's signature.

Every student who signs up for recreational skiing is given a packet of information which includes a description of the program as well as a permission form specific to the Recreational Ski program that must be signed and returned for the student to participate in the Recreational Ski program. Kusada's permission form was signed and returned. Once again, Kusada signed the form forging his father's signature. The permission form provided that helmets were

8

recommended but not required, that students were responsible for their own equipment which was available at a local retail store or from Berkshire East's rental department, and that lessons were available from Berkshire East instructors but not required. Once again, individual students, all of whom were in high school, made choices. Some took lessons. Some did not. Some wore helmets, some did not. Some brought equipment from home, some bought equipment from retail stores, some rented equipment and, at least one student, Kusada borrowed equipment from a friend.

Prior to the commencement of the ski trips on January 7, 2004, all students who had signed up had to attend a one hour organizational meeting. One was held at the Mount Hermon campus by Michael Atkins, Coordinator of Physical Education, and one was held on the Northfield Campus by Audra Forstrum, chaperone for the program. Kusada attended the one at the Mount Hermon campus.

All students were given copies of the skier's responsibility code. The first bullet point was – Always stay in control and be able to stop or avoid objects. G.L. c. 143 § 710 provides in part: "A skier shall maintain control of his speed and course at all times ..." Kusada does not know whether he maintained control of his speed and course. The students were told that green slopes were for beginners, blue slopes were for intermediates and black diamonds were for experts. G.L. c. 143 § 710 provides in part: "A skier shall be presumed to know the range of his own ability to ski on any slope, trail or area." Kusada does not know what he did or what he knew. He has no memory. G.L. c. 143 § 710 provides in part: "A skier shall be presumed to know of the existence of certain unavoidable risks inherent in the sport of skiing, which shall include but not be limited to, variations in terrain, surface or subsurface snow, ice conditions or bare spots and shall assume the risk of injury or loss caused by such inherent risks." Loss of

9

control is an inherent risk of skiing. Falling is an inherent risk of skiing. Skiing off the trail is an inherent risk of skiing. Kusada assumed the risk of injury or loss caused by those inherent risks.

On February 20, 2004, a Friday evening, the NMH students arrived at Berkshire East Ski Area on two buses, one from each campus, around 5:30 p.m. The students included Kusada and Hasegawa. Hasegawa was an experienced skier. He began skiing about the age of 5. He was an intermediate to expert skier, close to expert. Hasegawa skied with Kusada most of the time he was at the class trips to Berkshire East.

Hasegawa began teaching Kusada how to ski when they first went to Berkshire East. This was not unusual. Many students did not take lessons form Berkshire East preferring instead to learn from friends. They started on a bunny trail and gradually moved to trails Hasegawa felt Kusada could handle. As Kusada got better as a skier, Hasegawa and Kusada would move from the easy slopes to the more difficult slopes. Prior to February 20, 2004, Kusada had skied on black diamonds, the most difficult slopes, with Hasegawa. He never skied off the trail and into the woods on prior occasions.

Hasegawa skied with Kusada on the Big Chief trail many times prior to the accident. Kusada never skied off the Big Chief trail and into the woods on the prior occasions. Kusada could turn and stop by February 20, 2004. Kusada skied between a parallel and a wedge on February 20, 2004. Kusada felt comfortable skiing on Big Chief.

On February 20, 2004, between 7:30 and 8:00 p.m., Hasegawa skied behind Kusada to the midpoint on Big Chief trail when they stopped. The lower part of Big Chief is between a green (easy) and a blue (intermediate) slope. Hasegawa knew that the trail below the middle of Big Chief was easier. Kusada seemed okay to Hasegawa at the time. Hasegawa let Kusada start skiing from the midpoint, Hasegawa followed and passed him and then . . . waited for him at the bottom. Hasegawa has no memory of the ski conditions on Big Chief on February 20, 2004. He

10

does not remember whether it was icy or not. When Hasegawa got to the bottom, Kusada was not around. Neither Hasegawa nor any other person saw Kusada for the balance of the evening. Hasegawa continued skiing after he could not locate Kusada. Hasegawa would not have continued skiing if he knew Kusada had skied off the trail on lower Big Chief.

The students were due to return to NMH in two buses at approximately 9:30 p.m. One bus, the Northfield bus, left for the school with Hasegawa on the bus. The second bus, Kusada's bus, was held up because Kusada was missing. It was not unusual for a student or two to be late for the bus. When he did not return and could not be located in the lodge or the medical facility, a chaperone for NMH went to the Ski Patrol at about 9:50 p.m. to report that Kusada was missing. The Ski Patrol was already in the process of assembling for the nightly mountain sweep when they were notified of the missing student. The Ski Patrol conducted a trail by trail search for Kusada for approximately three hours. All trail were searched, including Big Chief, which was one of the first searched.

Because Kusada was not located, the State Police were contacted and searched Big Chief with a search dog. After assembling the necessary emergency response personnel, another search started at approximately 3:00 a.m. Kusada was located at approximately 4:00 a.m. Saturday morning. Kusada was located on the last drop of the Big Chief Trail approximately 10 to 15 feet off the trail. Kusada was lying in a gully behind a large tree. Kusada was unconscious when he was located and transported as soon as possible to Bay State Medical Center.

## II.    FACTS ESTABLISHED BY THE PLEADINGS

1.      The plaintiff, Yukio Kusada, at all relevant and material times was a student at Northfield Mount Hermon School, 206 Main Street, Northfield, Massachusetts, where he resided during the school year. Mr. Kusada currently resides at 1-8-3 ebisu-higashi, naniwa-ku, Osaka, Japan.

11

2.      The defendant, Northfield Mount Hermon School, is a Massachusetts educational institution with a usual place of business at 206 Main Street, Northfield, Massachusetts.

3.      The defendant, Francis Millard, was the Director of Physical Education at Northfield Mount Hermon School on or about February 20, 2004, with a usual place of business at 206 Main Street, Northfield, County of Franklin, Commonwealth of Massachusetts.

4.      The defendant, Michael Atkins, was the Coordinator of Physical Education and a Physical Education Teacher at Northfield Mount Hermon School on or about February 20, 2004, with a usual place of business at 206 Main Street, Northfield, County of Franklin, Commonwealth of Massachusetts.

5.      On February 20, 2004, Kusada participated in a physical education course known as the recreational ski program offered by NMH.

6.      Kusada participated in the physical education course known as the recreational ski program offered by NMH on February 20, 2004 at Berkshire East Ski Resort and was a lawful visitor at Berkshire East Ski Resort.

7.      Kusada was skiing on the premises of Berkshire East Ski Resort on February 20, 2004 and was injured.

### III.    CONTESTED ISSUES OF FACT.

1.      Whether Northfield Mount Hermon School was negligent and whether its negligence, if any, proximately and substantially contributed to the injuries to Yukio Kusada.

2.      Whether Frank Millard was negligent and whether his negligence, if any, proximately and substantially contributed to the injuries to Yukio Kusada.

3.      Whether Michael Atkins was negligent and whether his negligence, if any, proximately and substantially contributed to the injuries to Yukio Kusada.

12

4.      Whether Yukio Kusada was negligent and whether his negligence, if any, proximately and substantially contributed to the injuries to Yukio Kusada.

5.      Whether Yukio Kusada assumed the risk of his own injuries because the injuries flowed from inherent risks of skiing.

## IV.      JURISDICTIONAL ISSUES.

None.

## V.      PENDING MOTIONS.

None but now that discovery is complete defendants plan on filing a motion for summary judgment on the grounds that (1) the cause of the accident can only be speculative because Yukio Kusada does not remember what happened and there were no eye witnesses to tell us what happened; (2) the defendants had no duty to require a helmet, to require ski lessons, to test plaintiff's skiing ability, to require Yukio Kusada to remain on beginner slopes; and (3)Yukio Kusada assumed the risk of injury from inherent risks of skiing.

## VI.      ISSUES OF LAW.

**Plaintiffs**

Plaintiff will address issues of law in Motion in Limine concerning admissibility of the signed permission slip.

**Defendants**

1.      The existence of a duty is typically a question of law, not of fact. *Currier v. Riddell, Inc.*, 721 F. 2d 867, 868 (1st Cir. 1983). The defendants contend they had no duty to require a helmet, to require ski lessons, to test plaintiff's skiing ability, to require Yukio Kusada to remain on beginner slopes.

2.      If how an accident happened is purely a matter of speculation or conjecture, the injured party cannot recover and summary judgment is appropriate. *O'Connor v. Smith Kline*

*Bio-Science Laboratories, Inc.*, 36 Mass. App. Ct. 360, 363 (1994). In this case, no one knows how the accident happened. Kusada does not remember what happened and there were no eye witnesses.

3.     Whether Kusada, as a matter of law, assumed the risks for his injuries. G.L. c. 143, § 710.

## VII.   AMENDMENTS TO PLEADINGS.

The plaintiff requests that the pleadings be amended to delete the name of the third party defendant, Takeru Kusada as he has not been served in this matter.

## VIII.   ADDITIONAL MATTERS TO AID IN DISPOSITION OF THE CASE.

None.

## IX.   PROBABLE LENGTH OF TRIAL AND WHETHER JURY OR NON-JURY.

Jury – 7-10 days.

## X.   WITNESSES

**Plaintiff**

| | |
|---|---|
| Yukio Kusada<br>1-8-3 Ebisu-Higashi<br>Naniwa-ku<br>Osaka, Japan 556-0002 | Plaintiff – injured party. |
| Diane Arena<br>South Farm House<br>Mount Hermon Campus | Dean at NMH |
| Michael Atkins<br>New Boys Dorm<br>Mount Hermon Campus | Coordinator of ski course. |
| Lori Bassctt<br>22 Riviera Drive<br>Enfield, CT | Berkshire East employee who coordinated leasons |
| Kate Benedetti<br>268 Water Street<br>Granville, MA | Berkshire East employee involved with coordination of lessons |

14

Loren Byrom                                    Dean of Faculty at NMH
Northfield Mount Hermon School
206 Main Street, Box S
Northfield, MA 01360

Susan Clough                                   Chaperone for skiing program.
212 Willmark Avenue
Turners Falls, MA

Richard Eisenberg                              Chaperone for skiing program.
East Hall
Northfield Mount Hermon School
206 Main Street
Northfield, MA 01360

Frank Field, Jr.                               Ski patroller at Berkshire East
56 Maple Street
Shelburne Falls, MA

Robert Fielding                                Ski patroller at Berkshire East
368 Water Street
Granville, MA

Audra Forstrum                                 Chaperone for skiing program.
Northfield Mount Hermon School
206 Main Street
Northfield, MA 01360

John Herrick                                   Director of Ski School at Berkshire East
506 Zoar Road
Charlemont, MA

Yuki Hasegawa                                  Skied with plaintiff on February 20, 2004.
Brandeis University
Home address:
12232 Kawaijukuchoasahiku, Yokohamashi,
Kanagawa 2410804 Japan

Mari Kusada                                    Plaintiff's mother
1-8-3 ebisu-higashi
naniwa-ku
Osaka, Japan 556-002

Frank Millard                                  Responsible for skiing program.
Northfield Mount Hermon School
206 Main Street
Northfield, MA 01360

Edward Ralicki                                          Director of Ski Patrol at Berkshire East
253 Millers Falls Road
Turners Falls, MA 01376

Roy Schaefer                                            Manager of Berkshire East
14 Schaefer Way
Charlemont, MA 01339
Samuel Wilson                                           Allowed plaintiff to use his skies.
206 Main Street
Box 4283
Northfield Mount Hermon School
Northfield, MA 01360
(home) 149 Valley Street
Beverly, MA

Marilyn Buck, Ph.D.                                     Expert Witness – physical education
AT 202
College of Applied Sciences and Technology
Ball State University
Muncie, IN 47306

James Isham                                             Expert Witness – snow sports safety
23 Sunset Road
Taos, NM 87571

Dana C. Hewins, Ph.D.                                   Expert Witness – lost earning capacity
1 Tamett Brook Road
Lakeville, MA 02347

Norman C. Hursh, ScD, CVE, CRC                          Expert Witness – vocational rehabilitation
Boston University
Rehabilitation Services
635 Commonwealth Avenue
Boston, MA 02215

Doughlas Katz, M.D.                                     Expert Witness - neurologist
Medical Director of Brain Injury Program
Braintree Rehabilitation Hospital
250 Pond Street
Braintree, MA 02185

Margaret O'Connor, Ph.D.                                Expert Witness – neuropsychology
Director of Neuropsychology
Division of Behavioral Neurology
Beth Israel Deaconess Medical Center
330 Brookline Avenue
Boston, MA 02215

16

Lawrence E. Thibault, Sc.D.                    Expert Witness – helmet expert
Biomechanics
439 South Governor Printz Blvd.
Essington, PA 19029

Plaintiff reserves the right to call any witness listed by the defendant. Plaintiff reserves

the right to supplement this.

**Defendants**

Diane Arena                                    Dean at NMH on February 20, 2004
Northfield Mount Hermon School
206 Main Street
Northfield, MA 01360

Michael P. Atkins                              Defendant
Northfield Mount Hermon School
206 Main Street
Northfield, MA 01360

Lori Bassett                                   Berkshire East Employee – Coordinated
22 Riviera Drive                               Lessons
Enfield, CT

Katherine Benedetti                            Berkshrie East employee – Coordinated Ski
39 High Street                                 Program with NMH
Charlemont, MA 01339

David Borland                                  Former Coordinator of Program
Northfield Mount Hermon School
206 Main Street
Northfield, MA 01360

Loren Byrom                                    Dean of Faculty NMH
Northfield Mount Hermon School
206 Main Street
Northfield, MA 01360

Susan Clough                                   Chaperone for Ski Program 2003-2004
Northfield Mount Hermon School
206 Main Street
Northfield, MA 01360

Richard Eisenberg                              Chaperone for Ski Program 2003-2004
Northfield Mount Hermon School
206 Main Street
Northfield, MA 01360

Frank M. Field, Jr.                                  Ski Patroller on February 20, 2004 at Berkshire
56 Maple Street                                      East
Shelburne Falls, MA 01370

Audra Forstrum                                       Chaperone for Ski Program 2003-2004
Northfield Mount Hermon School
206 Main Street
Northfield, MA 01360

Yuki Hasegawa
12232 Kawaijukuchousahiku                            Student Witness on 2003-2004
Yokohamashi Kanagawa 2410804
Japan

John Herrick, Jr.                                    Ski Instructor At Berkshire  East 2003-2004
406 Zoar Road
Charlemont, MA 01339

Yukio Kusada                                         Plaintiff
Address Unknown

Mari Kusada                                          Plaintiff's Mother
1-8-3 ebisu-higashi
naniwa-ku
Osaka, Japan 556-002

Frank Millard                                        Defendant
Northfield Mount Hermon School
206 Main Street
Northfield, MA 01360

Edward Ralicki                                       Ski Patroller on February 20, 2004
47 Deer Run Lane
Shelburne Falls, MA 01370

Alfred L. Schaefer                                   Manager of Berkshire East
14 Schaefer Way
Charlemont, MA 01339

Samuel Wilson                           Student from Whom Kusada Borrowed Skis
Northfield Mount Hermon School
206 Main Street
Northfield, MA 01360

Jasper E. Shealy                        Defense Expert Industry Standards and School
34 French Road                          Standards, search protocols
Rochester, NY 14618

Charles M. Shure                        Defense Expert  Document Examination
P.O. Box 311                            Kusada's Permission Forms
Needham Heights, MA 02494

Evelyn Tillotson                        Coordinator of Permission Forms for NMH Ski
36 Highland Avenue                      Program 2003-2004
Northfield, MA 01260

Jim Westbrook                           House Director and Wrestling coach for
North Mount Hermon School               Kusada – Describe Athletic Ability, Athletic
206 Main Street                         Temperament and Attitude Toward Skiing
Northfield, MA 01360

Aaron Fok                               Student in 2003-2004 Recreational Ski
North Mount Hermon School               Program Describe Program, his participation,
206 Main Street                         what was offered
Northfield, MA 01360

Kathryn Hayes                           Student in 2003-2004 Recreational Ski
North Mount Hermon School               Program, Describe Program, her participation,
206 Main Street                         what was offered
Northfield, MA 01360

DEFENDANTS RESERVE THE RIGHT TO CALL OTHER STUDENTS WHO WERE
SKIERS IN THE 2003-2004 RECREATIONAL SKI PROGRAM FOR THE SAME PURPOSE
AS FOK AND HAYES.  A LIST OF THE STUDENTS IN THE 2003-2004 RECREATIONAL
SKI PROGRAM IS ATTACHED.  DEFENDANTS ALSO RESERVE THE RIGHT TO CALL
ANY WITNESS LISTED BY THE PLAINTIFF.

## X.    **LIST OF EXHIBITS.**

**Plaintiff**

Any and all of plaintiff's medical records from the moment that he was found at

Berkshire East Mountain, through the time that he was a patient at Bay State Medial Center, to

the time that he was a patient at Spaulding Rehabilitation Hospital and medical records from

treatment that he received from Japan and China. Plaintiff expects to offer as exhibits radiographic films of the plaintiff's injuries. Plaintiff may offer documents from Northfield Mount Hermon School which have been marked as exhibits in the case including but not limited to the physical education course description for the class known as Recreational Skiing, as well as unsigned permissions slips from the school concerning the Recreational Ski Physical Education Course. Plaintiff will object to any signed permissions slips which he expects defendants to offer. Plaintiff also expects to offer as an exhibit the incident report from Berkshire East Mountain, and the documents from Berkshire East Mountain. Plaintiff intends to offer his school records from NMH, photographs taken of him following the incident, photos of the mountain and ski equipment plaintiff was using at the time of the incident. Plaintiff also intends to offer documents from the Professional Ski Instructor's Association concerning the standard and protocol for teaching beginner skiers which includes specifics on assessment.

Plaintiff reserves the right to supplement this.

**Defendants**

1.      Emergency Procedures

2.      Permission signed by Parent/Guardian for all Activities and received from Yukio Kusadsa

3.      Permissions signed by Parent/Guardian for Ski Trip and received from Yukio Kusada.

4.      Recreational Ski Program Agenda

5.      Forms and Permissions Lists

6.      A Skiers Responsibility Code

7.      2003-2004 REC SKIING & SNOWBOARDING PACKAGE

8.      Attendance for 03-04 List

20

9.    List of Ability, Lessons and Rentals

10.    Berkshire East Ski Resort Information

11.    Letter from Katie Benedetti, Business Manager of Berkshire East Ski Resort dated November 3, 2003 to Kristen Atkins at NMH.

12.    Rec Ski 2003-2004 Notes on dates costs for buses, lift tickets, ski rentals, snowboard rentals, lessons, etc.

13.    NMH Preliminary Copy for Berkshire East NMH requests statement prior to payment.

14.    Memorandum to Jennifer Shaw, Accounting from Evelyn Tillotson dated January 30, 2004, revised February 23, 2004 Re:  Student Course Fee – Rec Ski & Snowboarding 2004. (Lists students and activity)

15.    Email to Frank Millard from Evelyn Tillotson dated November 11, 2003 with attachments – info ltr.doc – parent ltr.doc – mtgflier.doc Re:  signed permission slips.

16.    Notice of Rec Ski & Snowboard Meeting for December 2

## XI.    PROPOSED JURY INSTRUCTIONS

### Plaintiff

1.    "Negligence...in its ordinary sense, is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on him, the person of ordinary caution and prudence ought to exercise under the particular circumstances." *Beaver v. Costin*, 352 Mass. 624, 626 (1967), citing *Altman v. Aronson*, 231 Mass. 588, 591 (1918).

2.    In a civil action, the defendant is deemed to have breached a duty of care owed when he fails, either by omission or action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting upon him, a reasonable and prudent

21

person would have exercised under the circumstances. Stated another way, the defendant must exercise reasonable care under all circumstances. *Carrol v. Bouley*, 338 Mass. 625, 156 N.E. 2d 687 (1959); *Mounsey v. Ellard*, 363 Mass. 693 (1973).

3.    "The defendant was obliged to exercise a degree of care commensurate or proportionate to the probable dangers that might result from the lack of such care." *Parsons v. Dwightstate Co.*, 301 Mass. 324, 327 (1938).

4.    "Proximate cause is that which in continuous sequence, unbroken by a new cause, produces an event and without which the event would not have occurred. It may be assisted or accelerated by other incidental or ancillary matters but, if it continues as an operative and potent factor, the chain of causation is not broken." *Wallace v. Ludwig*, 292 Mass. 251, 254 (1935).

5.    The requirement of proximate cause is satisfied if you find that the "negligence of the defendant[s] was a substantial factor in bringing about the harm to the plaintiff." Tritsch v. Boston Edison Co., 363 Mass. 179, 182 (1973); See *Bannon v. Peerless Weighing & Vending Mach. Corp.*, 318 Mass. 607, 609 (1945).

6.    "The law presumes that a warning, if given, will be heeded." *Glicklich v. Spievack*, 16 Mass.App.Ct. 488, 493 (1983).

7.    The defendants in this case allege that the plaintiff was contributorily negligent and that this contributory negligence proximately caused the accident. Contributory negligence is an affirmative defense that the defendant must prove by a preponderance of the evidence. M.G.L. c. 231, §85.

8.    If you find that both the plaintiff and defendant were negligent, then the court will reduce the plaintiff's damages by the percentage of the plaintiff's negligence, if any. However, if you find that the negligence of the plaintiff was greater than that of the defendant, then the plaintiff will not recover any damages. M.G.L. c.231, § 85.

22

9.     "[W]herever there is a duty to exercise care, `the quality of care required of a person increases with any increase in the likelihood of harmful consequences to others if adequate care is not used.'" *Brennan v. Ocean View Amusement Co.*, 289 Mass. 587, 592 (1935).

10.     "It is only necessary for the plaintiff to prove that the defendants took a risk with respect to the plaintiff's safety that persons of ordinary prudence would not have taken, and that the plaintiff suffered a resulting injury that was within the foreseeable risk." Cimino v. Milford Key, Inc., 385 Mass. 323, 330 (1982); See *Wiska v. St. Stanislaus Social Club, Inc.*, 7 Mass. App. Ct. 813, 818 (1979), citing *Carey v. New Yorker of Worcester, Inc.*, 355 Mass. 450, 454 (1969).

11.     "There is no requirement of law that the plaintiff point out the exact way an accident happens. The plaintiff sustain[s] her burden if she prove[s] that there [is] a greater likelihood or probability that the harm complained of [is] due to causes for which the defendant [is] responsible than from any other cause." *McLaughlin v. Bernstein*, 356 Mass. 219, 226 (1969); See *Beaver v. Costin*, 352 Mass. 624, 627 (1967).

12.     "[T]he plaintiff shall be presumed to have been in the exercise of due care." M.G.L. c. 231, § 85.

13.     "The burden of alleging and proving negligence which serves to diminish a plaintiff's damages or bar recovery under this section shall be upon the person who seeks to establish such negligence. . ." M.G.L. c. 231, § 85.

14.     "[W]herever there is a duty to exercise care, `the quality of care required of a person increases with any increase in the likelihood of harmful consequences to others if adequate care is not used.'" *Brennan v. Ocean View Amusement Co.*, 289 Mass. 587, 592 (1935).

23

15.    "A person, though 'bound to be on the alert in looking out ... for [his] own safety' may rely ... on the expectation that '[he] would not be exposed' by another person to dangers which could have been avoided if proper precautions had been taken...." *Runnells v. Cassidy*, 307 Mass. 128, 129-130 (1940); See *McCarthy v. Morse*, 197 Mass. 332, 336 (1908).

16.    "[A] person who owns or controls an instrumentality which he knows, or with reasonable care should know, is dangerous in its nature or is in a dangerous condition and who disposes of it in a manner that he foresees, or in the exercise of reasonable care ought to foresee, will probably carry that thing into contact with some person, known or unknown, who will be ignorant of the danger, owes a legal duty to every such person to use reasonable care to prevent injury to him." *Mann v. Cook,* 346 Mass. 174, 176-177 (1963), citing *Carter v. Yardley & Co.,* Ltd., 319 Mass. 92; See Restatement Torts § 388.

17.    "It is only necessary for the plaintiff to prove that the defendant took a risk with respect to the plaintiff's safety that a person of ordinary prudence would not have taken, and that the plaintiff suffered a resulting injury that was within the foreseeable risk." *Cimino v. Milford Key, Inc.,* 385 Mass. 323, 330 (1982); See *Wiska v. St. Stanislaus Social Club,* Inc., 7 Mass. App. Ct. 813, 818 (1979), citing *Carey v. New Yorker of Worcester, Inc.,* 355 Mass. 450, 454 (1969).

18.    The defendant has argued that plaintiff's injuries were not the result of a negligent or wrongful act or failure to act by the defendant, but that her injuries were the result of an accident for which no one is responsible. The difference between a negligent act and an accident is whether the defendant breached a duty of care owed to the plaintiff. Thus, if you find that the defendant owed plaintiff a duty of care and that he acted in violation of that duty, then you must find he acted negligently and that the defendant is responsible for the injuries caused by his negligent act.

24

19.    A finding of negligence on that part of the defendant does not mean that he is a

bad person or that he is necessarily always reckless or careless. It means that on this particular

occasion, the defendant either used bad judgment or was not as attentive or as careful as he

should have been at the time.

20.    A plaintiff who has suffered physical injury through the fault of a defendant is

entitled to recover for pain and suffering; for reasonable expenses incurred by her for medical

care and nursing in the treatment and cure of her injury; for diminution in her earning power; and

for such pain and suffering and such expenses and diminution of earning capacity as are shown

to be reasonably probable to continue in the future. The measure of damages is fair

compensation for the injury sustained. The plaintiff is entitled to recover for those damages

stated, past, present and future. *Rodgers v. Boynton*, 315 Mass. 279, 280 (1943), citing *Sullivan

v. Old Colony Street Railway*, 197 Mass. 512 (1908); See *Mitchell v. Walton Lunch Co.*, 305

Mass. 76 (1940); Doherty v. Ruiz, 302 Mass. 145, 147 (1939); Daniels v. Celeste, 303 Mass.

148, 150 (1939); Cross v. Sharaffa, 281 Mass. 329, 331 (1933).

21.    The fact finder may include such damages as he feels the plaintiff is entitled to

receive for those injuries and the damages which have not yet occurred, but which he is likely to

have in the future because plaintiff is entitled to only one recovery for his injuries and damages.

He cannot come back years or even months from now and sue for additional money for medical

problems which will develop in the future or for the effect of these problems on the quality of his

life. Therefore, the fact finder should include in his present awards such additional

compensation which he feels the plaintiff will be entitled to for any future injuries and damages.

Stella v. Curtis, 348 Mass. 459, 204 N.E. 2d 457 (1965); Lewis v. Springfield, 261 Mass. 183,

158 N.E. 656 (1927); George v. Jordan Marsh Co., 359 Mass. 244 (1971).

22.     The jury may consider the life tables of the Department of Health and Human Services, Vital Statistics of the United States, to prove the probable duration of the plaintiff's life, both as it would relate to future lost earning capacity and to future pain and suffering and impairment, relative to the effects of his/her injuries. Turcotte v. DeWitt, 332 Mass. 160, 163-64 (1955).

23.     "[E]vidence of occupational education, capacity, duties and experience...." may be considered in valuation of loss of earning capacity. Doherty v. Ruiz, 302 Mass. 145, 147 (1939).

24.     The law commands that the wrongdoer pay what justice requires and common sense dictates. The defendant cannot escape accountability for his wrongful acts on the basis that its responsibility cannot be computed to the last dollar and penny. Sangler v. Helms New York-Pittsburgh Motor Express, 396 Pa. 482, 484-485, 153 .A2d. 490 (1959).

25.     The plaintiff must prove the elements of his claim by what is termed a preponderance of the evidence. Sargent v. Massachusetts Accident Company, 307 Mass. 246, 29 N.E.2d 25 (1940).

26.     The plaintiff has the burden of proving each essential element of his case by a preponderance of the evidence. Simply stated, this means the plaintiff must, through the evidence, make it appear more probable than not that the defendant was negligent and certain harm resulted. Stepakoff v. Kantor, 393 Mass. 836, 842 (1985).

27.     In determining the plaintiff's damages, you should taken into consideration the mental and physical pain and suffering endured by him since his injuries and in consequence thereof, and whether they are temporary or permanent, and find for him in such sum as your judgment, under all the facts and circumstances in evidence, will be a fair, adequate and reasonable compensation for him for whatever injuries and disabilities she sustained and will

26

sustain as a direct result of the negligence of the defendant. See v. Kelly, 363 S.W.2d 213, 218 (Mo. App. 1962).

28.     "The rule of damages is a practical instrumentality for the administration of justice. The principle on which it is founded is compensation. Its object is to afford the equivalent in money for the actual loss caused by the wrong of another." Sullivan v. Old Colony Street Railway, 197 Mass. 512, 516 (1908); Daniels v. Celeste, 303 Mass. 148, 150 (1939).

29.     In determining the plaintiff's damages, "you should take into consideration the mental and physical pain and suffering endured by him since his injuries and in consequence thereof, and whether they are temporary or permanent, and find for him in such sum as your judgment, under all the facts and circumstances in evidence, will be a fair, adequate and reasonable compensation for him for whatever injuries and disabilities he has sustained and will sustain as a direct result of the negligence of the defendant." See v. Kelly, 363 S.W.2d 213, 218 (Mo. App. 1962).

30.     "If the jury determines "that the plaintiff's pain and suffering would continue indefinitely," then the jury is warranted in considering the plaintiff's "life expectancy...even though his earning capacity was not impaired." Cuddy v. L and N Equipment Co., 352 Mass. 458, 462 (1967).

31.     If you believe that Yukio Kusada will incur future medical expenses which are reasonably necessary, then you may award damages for such reasonably necessary future medical expenses. Thibeault v. Poole, 283 Mass. 480, 186 N.E. 632 (1933).

32.     "[E]vidence of occupational education, capacity, duties and experience...." may be considered in valuation of loss of earning capacity. Doherty v. Ruiz, 302 Mass. 145, 147 (1939).

27

33.    In determining plaintiff's damages, you are not to consider any payments already made to the plaintiff as a result of the injuries sustained in this case or with repayments. It is the job of the court after the verdict to make any necessary adjustments.

34.    If you find that as a result of the negligence of the defendant that Yukio Kusada was unable to work or attend school or is unable to work in the future, whether such inability was temporary or permanent, then you shall compensate him for the fair value of the lost earnings.

35.    If you find that as a result of the negligence of the defendant that Yukio Kusada was unable to engage in household chores or is unable to engage in household chores in the future, whether such inability was temporary or permanent, then you shall compensate her for the fair value of the chores which she was and/or is unable to do.

36.    A school has a special relationship with its students, which creates duty to use reasonable care to safeguard its students. *Irwin v. Town of Ware*, 392 Mass. 745 (1984); *Mullins v. Pine Mannor*, 389 Mass. 47 (1983); *Alter v. City of Newton*, 35 Mass.App.Ct. 142 (1993); *Hasenfus v. LaJeunsse*, 175 F.3d 68 (1999).

37.    Teachers and administrators have a special relationship with their students, which creates a duty to use reasonable care to safeguard their students. *Irwin v. Town of Ware*, 392 Mass. 745 (1984); *Mullins v. Pine Mannor*, 389 Mass. 47 (1983); *Alter v. City of Newton*, 35 Mass.App.Ct. 142 (1993); *Hasenfus v. LaJeunsse*, 175 F.3d 68 (1999).

38.    A school owes a duty of reasonable care to its students, including the duty to take affirmative action to protect its students when it is reasonably foreseeable that failure to do would result in harm. *Irwin v. Town of Ware*, 392 Mass. 745 (1984); *Mullins v. Pine Mannor*, 389 Mass. 47 (1983); *Alter v. City of Newton*, 35 Mass.App.Ct. 142 (1993); *Hasenfus v. LaJeunsse*, 175 F.3d 68 (1999).

39.     Teachers and school administrators owe a duty of reasonable care to their students, including the duty to take affirmative action to protect their students when it is reasonably foreseeable that failure to do so would result in harm. *Irwin v. Town of Ware*, 392 Mass. 745 (1984); *Mullins v. Pine Mannor*, 389 Mass. 47 (1983); *Alter v. City of Newton*, 35 Mass.App.Ct. 142 (1993); *Hasenfus v. LaJeunsse*, 175 F.3d 68 (1999); *Hasenfus v. LaJeunsse*, 175 F.3d 68 (1999).

40.     Foreseeability can be based on whether students, parents, or members of the public reasonably rely on the school to take such actions. *Irwin v. Town of Ware*, 392 Mass. 745 (1984); *Mullins v. Pine Mannor*, 389 Mass. 47 (1983); *Alter v. City of Newton*, 35 Mass.App.Ct. 142 (1993); *Hasenfus v. LaJeunsse*, 175 F.3d 68 (1999).

41.     One who undertakes to render services to another is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking. *Mullins v. Pine Mannor*, 389 Mass. 47 (1983), citing Restatement of Torts (Second) §323.

**Defendant**

1.     The mere happening of an accident does not mean, in and of itself, that someone was negligent. *See Kelly v. Lahn Transp.*, 376 F.2d 588, 589 (1st Cir. 1967) (citing to *Callahan v. Lach*, 338 Mass. 233 (1958)); *Moynihan v. Boston & M.R.R.*, 227 Mass. 180, 182 (1917).

2.     "Although plaintiff is not required to point out the exact way in which this accident happened, [the plaintiff] does have the burden of proving that it was caused by the negligence of the defendant ... This is an affirmative burden which cannot be left to surmise, conjecture or imagination." *See Kelly*, 376 F.2d at 589-590

29

3.    If "it is impossible to tell from the evidence how the accident occurred: it is purely a matter of conjecture" *Moynihan v. Boston M.R.R.,* 227 Mass. 180, 182 (1917). *See also, O'Connor v. Smith Kline Bio-Science Laboratories, Inc.,* 36 Mass. App. Ct. 360, 363 (1994); *Howard v. Lowell Coca-Cola Bottling Co.*, 322 Mass. 456, 458-459 (1948).

4.    Negligence is the failure of a person to exercise that degree of care which a reasonable person would exercise in the circumstances. Morgan v. Lalamiere, 22 Mass. App. Ct. 262, 267, review denied, 398 Mass. 103 (1986).

5.    Reasonable care is the degree of care "commensurate with the probable harmful consequence that might reasonably be expected to result from the lack of such care. *McGaffe v. P.B. Mutrie Motor Trans., Inc.*, 311 Mass. 730, 735, (1942) (quoting *Avery v. R.E. Guerin Trucking Co.*, 304 Mass. 500, 505-06, (1939).

6.    Reasonable care is that amount of care an ordinary and prudent person would exercise under the circumstances. *Spano v. Wilson Tisdale Co.*, 361 Mass. 209, 213, (1972).

7.    While the violation of a safety statute, ordinance or regulation is not conclusive on the issue of civil liability, it . . . is evidence of negligence on the part of a violator as to all consequences that the statute, ordinance or regulation was intended to prevent. *Perry v. Medeiros,* 369 Mass. 836, 841, (1976) (quoting *Follansbee v. Ohse*, 293 Mass. 48, 52, (1935).

8.    A skier shall maintain control of his speed and course at all times . . . . G.L. c. 143, §710. If Kusada did not maintain control of his speed and course at all times, he violated this which is evidence of negligence by Kusada.

9.    A skier shall be presumed to know the range of his own ability to ski on any slope, trail or area . . . . G.L. c. 143, §710.

10.    As a defense to this action, the defendants are claiming that the plaintiff was negligent and that the plaintiff's own negligence caused his injuries. We have a law in

30

Massachusetts called the "comparative negligence statute" that requires you, the jury, to compare the negligence, if any, of the defendant[s] to the negligence, if any, of the plaintiff. Unlike the previous elements where the plaintiff has the burden of proof, as to this issue, the defendants have the burden of proving by a preponderance of the evidence that the plaintiff was negligent and that this negligence contributed to cause the plaintiff's injuries. When you are determining whether the plaintiff was negligent, remember the instructions on causation. The plaintiff's negligence must have contributed to the cause of his injury for this comparative negligence analysis to apply. A plaintiff's negligence causally contributes to his injury if he ought to have foreseen that his conduct in connection with other causes would be likely to produce an accident. If you are convinced by a preponderance of the evidence that the plaintiff was negligent, you are to compare that negligence to the negligence of the defendants. To accomplish this comparison, determine the percentage that the plaintiff was negligent and the percentage that each defendant was negligent. The combined total of the negligence of the plaintiff and all the defendants must equal 100 percent. If the negligence of the plaintiff is greater than the combined negligence of the defendants, the plaintiff will not be entitled to recover any damages. If the negligence of the plaintiff is equal to or less than the negligence of all the defendants combined, the plaintiff's damages will be diminished by the percentage of his own negligence. If the negligence of the plaintiff is less than 50 percent, the amount you determine to be the plaintiff's damages will be reduced by that percentile by the clerk. For example, if you determine that the plaintiff was 20 percent negligent and that the combined negligence of all defendants was 80 percent, the amount of the plaintiff's total damages will be reduced by 20 percent by the clerk. You should write in the full amount of the damages without making any deduction for comparative negligence, keeping in mind that the clerk will make any such deduction after you render your verdict. G.L. c. 231, § 85.

31

11.    If you find that the defendant violated any safety statute, ordinance, or regulation applicable to [him/her] and that the eventual occurrence was one of the things that the statute was designed to prevent, then the violation is some evidence of negligence on the part of the defendant. It is not, however, conclusive evidence of negligence. It is not necessary that the defendant has been charged with or convicted of a violation. It is sufficient if you find that the statute, regulation, or ordinance was one that the defendant was supposed to comply with and that [he/she] did not comply with the statute. If that is proved, you may consider that fact, together with all the other circumstances, in determining whether the defendant acted negligently. However, you need not find a violation of law in order to hold the defendant liable for negligence in causing or contributing to causing plaintiff's injuries.

12.    In order to recover for negligence against the Defendant, the Plaintiff must prove by a preponderance of the evidence three essential elements:

(a)    That the Defendant owed a duty to the Plaintiff;

(b)    That the Defendant breached that duty; and

(c)    That the breach of that duty proximately caused the injury sustained by the Plaintiff.

Beaver v. Costin, 352 Mass. 624, 227 N.E.2d 344 (1967).

13.    The burden of proof is upon the Plaintiff to show by a preponderance of the evidence that the negligence of the Defendant was the proximate cause of the injuries of the Plaintiff. Rocha v. Alber, 302 Mass. 155, 18 N.E.2d 1018 (1939).

14.    (a)    Proximate cause is the cause that sets in motion a chain of events which bring about a result without the intervention of a new and independent cause. Wallace v. Ludwig, 292 Mass. 251, 254, 198 N.E.2d 159, 161 (1935).

32

(b)    Proximate cause is an active, efficient cause that sets in motion a train of events which brings about a result without the intervention of any new and independent cause. Lynn Gas & Electric Co. v. Meredin Ins. Co., 158 Mass. 570, 575, 33 N.E. 690 (1893).

15.    As to causation, you must rely entirely upon the evidence that you have heard here that some act or failure to act by Defendant was the cause of Plaintiff's injuries. Negligence "in the air" is not enough to warrant a finding against Defendant. Unless you find from the evidence that some negligent act or failure to act by Defendant in fact was the direct cause of Plaintiff's injuries, then you cannot find that Defendant is legally liable for those injuries. Murphy v. Conway, 360 Mass. 746, 277 N.E.2d 681 (1972). McCarthy v. Boston City Hospital, 358 Mass. 639, 266 N.E.2d 292 (1971). Marangian v. Apelian, 286 Mass. 429, 190 N.E. 729 (1934).

16.    As to causation, even if some failure by the Defendant was negligence, you must ask whether the risk of the accident that occurred was a reasonably foreseeable consequence of the Defendant's negligence. If the risk was not a reasonably foreseeable consequence of any negligence by the Defendant, then any negligence by the Defendant was not a proximate cause of the injury. Young v. Atlantic Richfield Co., 400 Mass. 837, 842, 512 N.E.2d 272 (1987), cert. den. 484 U.S. 1066 (1988). Put another way, you must determine whether the Defendant's breach of duty created a risk of the type that was causally related to the result which occurred. Young v. Atlantic Richfield Co., supra, citing Bellows v. Worcester Storage Co., 297 Mass. 188, 197, 7 N.E.2d 588 (1937).

17.    The plaintiff also has the burden of proving by the preponderance of the evidence that the defendant's negligence substantially contributed to causing the plaintiff's injury . The plaintiff does not have to prove that the defendant's negligence as the only or predominant cause of the injury. If two or more factors, which operated concurrently, contributed to the plaintiff's

33

injury, so that in effect the damages suffered were inseparable, then it is enough for the plaintiff to prove that the defendant's negligence was a substantial contributing factor in causing the injury. By "substantial" I mean that the defendant's contribution to the harmful result, i.e., the defendant's negligence, was not an insignificant factor. The defendant's negligence must contribute significantly to the result; it must be material and important ingredient in causing the harm. The defendant's negligence was a substantial factor, then it is considered a legal cause of the plaintiff's injury, and the plaintiff is entitled to recover. If it was not a substantial factor, if the negligence was only slight, insignificant, or tangential to causing the harm, then even though you may have found the defendant negligent, [he/she] cannot be held liable to pay damages to the plaintiff on this claim. The defendant is liable for those injuries that are reasonably foreseeable consequence of [his/her] negligence. When we say that something if foreseeable, we mean that it is a probable and predictable consequence of the defendant's negligent acts or omissions. Thus, if the defendant should have realized that [his/her] conduct might cause harm to a person in the plaintiff's position in substantially the manner in which it was brought about, the injury is regarded as the legal consequence of the defendant's negligence.

18.     Plaintiff is not entitled to recover if any of the material circumstances as to negligence of the Defendant is left to conjecture or guesswork. You are not allowed to guess or to speculate on whether the negligence of the Defendant was the proximate cause of injury to Plaintiff. You must be guided by the evidence. Zezuski v. Jenny Mfg. Co., 363 Mass. 324, 328, 293 N.E.2d 875, 878 (1973; Cohen v. Suburban Sidney-Hall, Inc., 343 Mass. 217, 219, 178 N.E.2d 19, 21 (1961); Baglio v. Director General of Railroads, 243 Mass. 203, 205, 137 N.E. 257, 258 (1922).

19.     The mere fact that an accident happens does not furnish evidence that it was caused by any person's negligence, and the Plaintiff must point to some negligent act or

34

omission on the part of the Defendant, Mendum v. M.B.T.A., 1 Mass. App. Ct. 873, 307 N.E.2d 16 (1974); Moynihan v. Boston & Maine R.R. Co., 227 Mass. 180, 116 N.E. 225 (1917).

20.     The underlying duty is to exercise the care which the circumstances reasonably require. Kane v. Field's Corner Grille, Inc., 341 Mass. 640, 171 N.E.2d 287 (1961).

21.     You must also consider whether any actions other than those of the Defendant contributed to the cause of the accident. If you find that the actions of any other person or entity presented an intervening, contributing and necessary cause of the accident, such that the accident would not have occurred without such actions, and that the Defendant could not have foreseen such actions, then you may find that he was not liable for the accident. Jesionek v. Mass. Port Authority, 376 Mass. 101, 105 (1978); Tritsch v. Boston Edison Co., 363 Mass. 179, 182 (1973).

22.     You are not obliged to accept all of the evidence as true or accurate. You are the only ones who judge the credibility or "believability" of each witness and the weight to be given to the witness' testimony. In weighing the believability of testimony of a witness, you should consider his or her relationship to the case, the interest, if any, that the witness has in the outcome of the case, the manner of the witness – how the witness impressed you on the stand, and the extent to which a witness has been supported or contradicted by other evidence. You may accept or reject the testimony of any witness in whole or in part.

23.     Any witness may be discredited by contradictory evidence or by evidence that some other time the witness has said or done something which is inconsistent with the testimony given in the Court. If you believe that any witness has been so discredited, it is your exclusive right to give testimony of that witness such belief and weight as you think it deserves. Experts have testified in this case. To the extent they have been allowed to offer opinions, those opinions are not binding on you and you are free to accept or reject them as you see fit. Dodge v. Sawyer, 288 Mass. 402, 193 N.E. 15, 17 (1934). In addition, just as your decisions cannot be based on

35

guesswork, expert opinion is not to be considered if you find it rests on speculation as the facts of the accident. Swartz v. General Motors Corp., 375 Mass. 628, 378 N.E.2d 61, 65 (1978). Slatkovitz v. General Motors Corp., 523 F. Supp. 383, 385 (D. Mass. 1981).

24.   A skier shall be presumed to know of the existence of certain unavoidable risks inherent in the sport of skiing, which shall include but not be limited to, variations in terrain, surface or subsurface snow, ice conditions or bare spots, and shall assume the risk of injury or loss caused by such inherent risks. G.L. c. 143, § 710.

A defendant does not have a duty to warn about dangers that are open and obvious to persons of average intelligence. O'Sullivan v. Shaw, 431 Mass. 201, 204 (2000).

25.   As to damages, the fact that I give you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as any indication that I believe that Plaintiff should or should not prevail in this case.

26.   It is only if you find that the Defendant was negligent and that his negligence caused Plaintiff's injuries, or some of them, that you reach the issue of damages.

27.   In this type of case, damages are not awarded to punish the Defendant. Their sole purpose is to make restitution – that is, to make up to the Plaintiff for the money he has lost or may lose in the future and for the pain and suffering you find he has experienced. Nolan, Mass. Practice Series, Vol. 37, Chapter 11, Section 205. This means you may award an amount of money that will meet the fair value of the medical services Plaintiff has been obliged to obtain, any loss of earning capacity that Plaintiff has demonstrated has been caused by the incident and fair compensation for the pain and suffering you find the Plaintiff has endured as a result of the Defendant's negligence. Rogers v. Boynton, 315 Mass. 279, 52 N.E.2d 576 (1943); Doherty v. Ruiz, 302 Mass. 145, 18 N.E.2d 542 (1939).

36

28.     The burden is upon the Plaintiff to show that any treatment legitimately arose out of the injury in the sense that the treatment rendered was a bona fide effort to alleviate and ameliorate the injury. Victum v. Martin, 367 Mass. 404, 326 N.E.2d 12 (1975).

29.     In the absence of supporting evidence sufficient to warrant a rational conclusion as to the extent the Plaintiff's capacity to earn has been impaired and the fair value of such impairment, the Plaintiff's opinion as to the value of his own services is not admissible in evidence. It is not proper for evidence of impairment of earning capacity to take the form of an estimate of a sum that would compensate for the impairment. A Plaintiff may not give his opinion as to the amount of his lost earning capacity; he cannot be permitted to fix his own damages. Leav v. Boston Elevated Railway Company, 306 Mass. 391, 28 N.E.2d 483 (1940); Williamson v. Feinstein, 311 Mass. 322, 41 N.E.2d 185 (1942); 11 M.P.S. Section 246.

Respectfully submitted,

| | |
|---|---|
| YUKIO KUSADA | NORTHFIELD MOUNT HERMON SCHOOL, FRANCIS MILLARD AND |
| By His Attorneys | MICHAEL ATKINS |
| Breakstone, White-Lief & Gluck, P.C. | By Their Attorneys |
| | Holland & Knight, LLP |

/s/ Ronald E. Gluck

Ronald E. Gluck
BBO #196950
Two Center Plaza
Suite 530
Boston, MA 02108-1906
(617) 723-7676

/s/ Harold W. Potter, Jr.
Harold W. Potter, Jr.
BBO #404240
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Dated: October 26, 2006

# 4130605_v1

37